UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BBSR, LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ANHEUSER-BUSCH, LLC,<br><br>*Defendant*. | Civil No. 3:22cv544 (JBA)<br><br>January 3, 2023 |

**ORDER GRANTING PLAINTIFF'S MOTION TO REMAND**

Plaintiff BBSR, LLC has moved to remand this case to state court on the grounds that this Court lacks jurisdiction in the absence of complete diversity. (Pl.'s Mot. to Remand [Doc. # 13].) Defendant Anheuser-Busch, LLC, whose sole member is a corporation with Delaware citizenship, opposes and claims that Plaintiff has improperly destroyed diversity by having Plaintiff's former members create a non-diverse Delaware shell company (BBSR Management, Inc.) to which they assigned all of their membership interests, making it Plaintiff's new sole member. (Def.'s Mem. in Opp. of Remand [Doc. # 35].) Defendant asserts that the Court should disregard the assignments and conclude that Plaintiff's true state of citizenship is Connecticut, which is the state of domicile for Plaintiff's former members, rather than Delaware. (*Id.*) For the reasons below, the motion to remand is GRANTED.

**I.   Background**

This case involves a contract dispute related to Defendant's acquisition of a company founded by Nicholas Shields and David Holmes (formerly Plaintiff's only members) for which Defendant served as the seller representative. Shields and Holmes were both Connecticut citizens. Plaintiff filed suit in Connecticut state court on March 21, 2022, alleging Defendant's breach of contract, breach of the implied covenant of good faith and fair dealing, violation of

CUTPA, and contractual indemnification. (Pl.'s Mot. at 2.) The complaint alleged that Plaintiff LLC was incorporated in and had its primary place of business in Connecticut, but was silent as to the citizenship of its members. (Def.'s Mem. at 3.) On April 14, 2022, Defendant, a Delaware state corporation, removed the case to federal court on the basis of diversity jurisdiction under 28 U.S.C. § 1332. (Notice of Removal [Doc. # 1].)

Plaintiff's motion to remand [Doc. # 13] was accompanied by an affidavit by Plaintiff's counsel, with supporting exhibits, which stated that Mr. Shields and Mr. Holmes, the former members of Plaintiff LLC, assigned their membership interests to a new corporation founded by Mr. Shields in Delaware called BBSR Management, Inc. prior to filing the complaint. (Def.'s Mem. at 4.) These assignments resulted in BBSR Management, Inc. becoming Plaintiff's sole member. (*Id.*) Thereafter, Defendant sought jurisdictional discovery [Doc. # 23] to ascertain whether Plaintiff had engaged in collusive assignment of its interests to a shell corporation for the purpose of destroying diversity jurisdiction. Because Plaintiff conceded for purposes of the motion that it had, the Court concluded that jurisdictional discovery would be unnecessary and denied the motion. [Doc. # 34].

**I.    Legal Standard**

"The party opposing a motion to remand bears the burden of showing that the requirements for removal are satisfied." *D.B. Structured Prod., Inc. v. Savvidis*, No. 3:21-CV-388 (VAB), 2022 WL 73486, at *1 (D. Conn. Jan. 7, 2022). When a case is originally brought in state court, a party may remove "any civil action . . . of which the district courts of the United States have original jurisdiction" except "as otherwise expressly provided by Act of Congress." 28 U.S.C. § 1441. "In light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments,

federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Intern., Inc.*, 28 F.3d 269, 274 (2d Cir.1994).[1]

## II. Discussion

Defendant's claim of diversity jurisdiction under § 28 U.S.C. 1332 requires that there be "no plaintiff and no defendant who are citizens of the same State" and that the amount in controversy exceed $75,000. *Wisconsin Dep't of Corr. v. Schacht*, 524 U.S. 381, 388 (1998). "[F]or purposes of diversity jurisdiction, a limited liability company has the citizenship of its membership." *Handelsman v. Bedford Vill. Assocs. Ltd. P'ship*, 213 F.3d 48, 51–52 (2d Cir. 2000). Members that are "natural persons" have their citizenship determined according to domicile; members that are "corporate entities" have their citizenship determined by "the place of incorporation and principal place of business." *Avant Cap. Partners, LLC v. W108 Dev. LLC*, 387 F. Supp. 3d 320, 322 (S.D.N.Y. 2016).

Plaintiff LLC claims to be a citizen of Delaware, which is the state of incorporation of its sole member, BBSR Management. (Pl.'s Mot. at 3-4). Because Defendant LLC's sole member is also incorporated in Delaware, the two parties would not be diverse. Defendant views Plaintiff's motion as "based entirely upon a collusive shell game initiated to deprive Anheuser-Busch of its rightful access to federal court" and urges that the Court "exercise its authority to protect its own jurisdiction and to protect [Defendant's] statutory and constitutional rights to a federal forum by disregarding [the former members'] collusive assignment of their interests to a sham corporation . . . ." (Def.'s Mem. at 3.) Defendant makes two primary arguments in support of its request: jurisdictional maneuvering to destroy diversity jurisdiction is disfavored by the federal courts, and remand would violate

---

[1] Unless otherwise indicated, internal citations, quotation marks, and other alterations are omitted throughout in text quoted from court decisions.

3

Defendant's statutory and constitutional rights to avail itself of diversity jurisdiction and the removal statute. The Court addresses each argument in turn below.

### A.   Jurisdictional Maneuvering

#### 1.   Parties' Arguments

Defendant argues that federal courts have acted to protect their jurisdiction in the past by rejecting collusive attempts to defeat it. (Def.'s Mem. at 5.)[2] Plaintiff relies on cases upholding actions taken by parties to avoid federal jurisdiction with the specific motive of so doing. *See Baddie v. Berkeley Farms, Inc.*, 64 F.3d 487, 490 (9th Cir.1995) (withdrawing federal claims after removal to support remand to state court was a "legitimate" "tactical decision" rather than manipulative); *Peterson v. Allcity Ins. Co.*, 472 F.2d 71, 74 (2d Cir. 1972) (holding that the motive behind a natural party's change in domicile was immaterial so long as she intended to make the state her home and had no intention of moving elsewhere); *see also Williamson v. Osenton*, 232 U.S. 619 (1914). Plaintiff focuses on what it claims is a key factor in both parties' cited cases as not whether a party's motive is to destroy jurisdiction, but instead whether the "real party in interest" will be litigating the case; here, "BBSR and Anheuser-Busch are the proper parties to the dispute." (Pl.'s Reply at 1, 10.); *see, e.g.*, *Navarro Savs. Assoc. v. Lee*, 446 U.S. 458, 460 (1980) ("the citizens upon whose diversity a plaintiff grounds jurisdiction must be real and substantial parties to the controversy.").

---

[2] Several of Defendant's cited cases in support of that proposition appear inapposite. For example, *Alabama Great Southern Railway Co. v. Thompson,* 200 U.S. 206, 218 (1906) and *Wecker v. National Enameling & Stamping Co.,* 204 U.S. 176, 183 (1907) raise the issue of whether a plaintiff can thwart removal by improperly naming or joining non-diverse parties, not through assignment, and *Maryland Casualty Co. v. W.R. Grace & Co.*, 23 F.3d 617, 623 (2d Cir. 1993) deals only with re-alignment of parties. *See also Navarro Sav. Ass'n v. Lee,* 446 U.S. 458, 462 (1980) (dealing with a trust "masking" an unincorporated association of individuals, not the validity of LLC member citizenship); *LNY 5003 LLC v. Zurich Am. Ins. Co.*, 558 F. Supp. 3d 416, 424 (S.D. Tex. 2021) (declining to address whether an assignment was collusive and thus improper because the assignment was invalid under an anti-assignment clause).

Plaintiff finds support for its interpretation in the vintage *Provident Savings Life Assurance Society v. Ford,* in which the Supreme Court held that an "assignment of a cause of action, made to prevent removal to federal court, prevents a federal court from assuming jurisdiction" so long as the assignment is a complete one. 114 U.S. 635 (1885). In *Provident,* Cochran, a citizen of Ohio, assigned his claim to Ford, a natural person and citizen of New York, who then sued a New York defendant in New York state court. *Id.* at 635. The Court rejected the defendant's argument that because the assignment was without consideration and "if possible, [to] prevent the transfer of this action to the United States courts," the assignment for the purposes of removal should be disregarded because the real party in interest [Cochran] was diverse from the defendant. *Id.* at 638. Holding that there was no right of removal, the Supreme Court explained that:

> [w]here an assignment of a cause of action is colorably made for the purpose of giving jurisdiction to the United States court, the fifth section of the [A]ct of [C]ongress of March 3, 1875, relating to removals, has now given to the circuit courts power to dismiss or remand the cause at any time when the fact is made to appear. And by analogy to this law, it may, perhaps, be a good defense to an action in a state court to show that a colorable assignment has been made to deprive the United States court of jurisdiction; but, as before said, it would be a defense to the action, and *not a ground of removing that cause into the federal court*.

*Id.* at 641 (emphasis added).

Defendant contends that *Kramer v. Caribbean Mills, Inc.*, 394 U.S. 823, 828 (1969), holding that the plaintiff's assignment of claims to a third party to "make diversity jurisdiction available" while retaining an interest in the award was improper or collusive under 28 U.S.C. § 1359, was a "departure from the Court's holding in *Provident*" that district courts not "inquire into the motives behind assignments destroying diversity," *Grassi v. Ciba-Geigy, Ltd.*, 894 F.2d 181, 184 (5th Cir. 1990). Defendant maintains *Kramer* signaled that "federal courts should be alert to protect their jurisdiction against cleverly-designed

5

maneuvers designed by ingenious counsel to defeat it." *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 166–67 (D. Me. 1969). Defendant further points to *Grassi* and *Attorneys Trust*[3]— the two leading circuit cases on the destruction of diversity. *See Grassi*, 894 F.2d at 184; *Attorneys Tr. v. Videotape Computer Prod., Inc.,* 93 F.3d 593, 593-598 (9th Cir. 1996) (relying heavily on *Kramer* to fashion the factors used to evaluate whether an assignment was improper or collusive).

Plaintiff interprets *Kramer* and its progeny as simply seeking to ensure that the parties prosecuting the case are the true parties in interest, distinguishing between complete and partial assignments based on whether those assignments change the true party in interest. *See Attorneys Tr.*, 93 F.3d at 597 (framing the question as whether "the assignee is truly a real party in interest or just a strawman for all practical purposes," and noting that "[b]roadly speaking, if an assignment is entire, not partial, there is a very good chance that it will be found to be proper"); *Nukote of Ill., Inc. v. Clover Holdings, Inc.*, 2011 WL 13290667 (N.D. Tex. Mar. 8, 2011) (finding no valid assignment because the financial interest the assignor retained in the outcome of the litigation made the assignment incomplete,); *Gentle v. Lamb-Weston, Inc.*, 302 F. Supp. 161, 164 (D. Me. 1969) ("'It is one thing to say that diversity may be destroyed by an assignment of the assignor's entire claim and quite another to say that diversity may be destroyed by the assignment of a mere one per cent of a claim.'").[4]

---

[3] *Miller v. Perry*, 456 F.2d 63, 68 (4th Cir. 1972), which Defendant cites, concerns whether the citizenship of an administrator or a deceased beneficiary would be considered for purposes of diversity in light of a state law that required appointment of in-state administrators for any claims brought in that state. This issue is significantly different from the issue at hand in this case.

[4] *Overrated Prods., Inc. v. Universal Music Grp.*, 2019 WL 6729718 (C.D. Cal. 7 July 31, 2019), which relied on *Attorneys Trust* to hold that a complete assignment of royalty rights made to evade the court's jurisdiction was invalid, failed to acknowledge that *Attorneys Trust* cabined its holding to partial assignments. *Compare with Go Comput. Inc. v. Microsoft Corp.,* No. C 05-03356 JSW, 2005 WL 3113068, at *2-3 (N.D. Cal. Nov. 21, 2005) (holding that the court should not scrutinize the assigning party's motive in complete claim assignments based on

Plaintiff further distinguishes assignments of *claims* from assignments of *interests* (as here) because the latter does not raise the same concerns about straw parties. *See Plush Lounge Las Vegas, LLC v. Lalji*, No. 08 Civ. 8394, 2010 WL 5094238 at *3-4 (C.D. Cal. Dec. 7, 2010) (distinguishing the assignment of claims from the assignment of interests because in the former, "the jurisdictional question is answered by deciding who [] the real party in interest [is]"); *see also Opuna, LLC v. Sabbagh*, No. 05-00488, 2006 WL 2374750, at *8 (D. Haw. Aug. 15, 2006) (distinguishing *Attorneys Trust* as involving an assignment of interests, rather than of claims).

### 2. Analysis

The Court accepts that existing jurisdictional jurisprudence does not reflect either a universal endorsement or condemnation of actions taken by parties with the motive of destroying diversity jurisdiction but reflects an overall recognition of the need to ensure that the true parties in interest will be litigating the case. This principle is most clearly illustrated by *Provident,* which explicitly acknowledged that § 1359 gave courts the authority to examine the motives of a party when the assignment was "colorably made for the purpose of *giving* jurisdiction to the United States court" but held that courts could not examine the motives of a *complete* assignment that would, as here, do the opposite. 114 U.S. at 641 (emphasis added). Similarly, *Kramer* held that courts could look to the motives of the parties when they engaged in collusive assignment with the intent to "make diversity jurisdiction *available*," 394 U.S. at 828 (emphasis added), and declined to overrule the Supreme Court's past precedents on assignments which had held that "where the transfer of a claim is absolute, with the transferor retaining no interest in the subject matter, then the transfer is

---

*Provident* and distinguishing *Attorneys Trust* as applicable only to partial assignments) *and Molina Healthcare, Inc. v. Celgene Corp.,* No. 21-CV-05483-JCS, 2022 WL 161894, at *16 (N.D. Cal. Jan. 18, 2022) (same).

not 'improperly or collusively made,' *regardless of the transferor's motive.*" *Id.* at 828 n.9 (1969) (emphasis added).

Thus, when an assignment of interests is complete, with the consequence of *defeating* diversity jurisdiction, it should not be disregarded absent a contrary statutory or constitutional mandate to do otherwise which, as discussed below, does not exist.[5]

### B.   Constitutional and Statutory Rights

#### 1.   Parties' Arguments

Defendant also relies on the animating principle behind the creation of diversity jurisdiction—"protecting out-of-state litigants from local prejudice"—to argue that disregarding the assignment would violate its right to diversity jurisdiction. *Douglas Energy of N.Y, Inc. v. Mobil Oil Corp.*, 585 F. Supp 546, 548 (D. Kan. 1984). Defendant argues that the "right" to removal similarly protects against "local bias," *Nukote*, 2011 WL 13290667 at *9, and that allowing intentional destruction of diversity jurisdiction frustrates both "defendant's constitutional and statutory rights." *JMTR Enters., L.L.C. v. Duchin*, 42 F. Supp. 2d 87, 92-93 (D. Mass. 1999); *see also LNY 5003 LLC v. Zurich Am. Ins. Co.*, 558 F. Supp. 3d 416,

---

[5] Other courts have reached the same conclusion, albeit for varying reasons. *See Williams v. Wells Fargo Bank, Nat. Ass'n,* 9 F. Supp. 3d 1080, 1087 (W.D. Mo. 2014) (holding that although the court questioned the continued validity of the underlying principles, binding Supreme Court authority required finding that a complete assignment of a claim would defeat diversity jurisdiction, even if "the assignment was made for the purpose of preventing such removal"); *Gulf Hydrogen & Energy, Inc. v. Eastman Chem. Co.,* No. 2:13-CV-276, 2013 WL 5945671, at *3 (S.D. Tex. Nov. 5, 2013) (denying jurisdictional discovery because neither the text of § 1359 nor any Supreme Court or Circuit precedent prohibited a conversion in corporate citizenship for the purpose of defeating diversity); *Nepveux, Inc. v. Mobil Expl. & Producing N. Am.*, No. 6:18-CV-00467, 2018 WL 4523953, at *2 (W.D. La. Aug. 16, 2018), *report and recommendation adopted sub nom*; *Nepveux, Inc. v. Mobil Expl. & Producing N. Am., Inc.*, No. 6:18-CV-00467, 2018 WL 4518006 (W.D. La. Sept. 20, 2018) (denying a motion for jurisdictional discovery to determine whether a shell corporation was formed solely to "defeat diversity jurisdiction" because the motive behind the transfer was not relevant).

428-29 (S.D. Tex. 2021) (holding "that diversity jurisdiction can't be effectively amended out of the Federal Constitution by expedient assignment").

Plaintiff focuses on 28 U.S.C. § 1359, which prohibits "improperly or collusively" making or joining any party, by assignment or otherwise, "to *invoke* the jurisdiction of such court." (emphasis added). Plaintiff argues that § 1359 is an intentional choice by Congress to restrict collusive *creation* of federal jurisdiction without any symmetrical restriction on *destruction* of jurisdiction. (Pl.'s Reply at 2.) Because a narrow reading of the statute aligns with "congressional intent to restrict federal court jurisdiction" and the Second Circuit's position that district courts should "construe the removal statute narrowly, resolving doubts against removability," Plaintiff urges the Court to follow the principle that "Congress will speak when it wants to do so" and find through application of the canon of construction "*expressio unius est exclusio alterius*"—the express mention of one thing excludes that which is not mentioned—that the statutory prohibition of collusive jurisdictional creation implicitly excludes any prohibition of collusive jurisdictional destruction. (Pl.'s Reply at 2 (citing *Platinum-Montaur Life Scis., LLC v. Navidea Biopharmaceuticals, Inc.*, 943 F.3d 613, 617 (2d Cir. 2019)). Defendant responds that diversity jurisdiction and removal statutes are also "policy choices of Congress" meant to protect a litigant's right to avail themselves of diversity jurisdiction, and 28 U.S.C. § 1359 should not be read to take that right away. (Def.'s Mem. at 10.)

    **2.**    **Analysis**

It is a "fundamental precept that federal courts are courts of limited jurisdiction," *Owen Equip. & Erection Co. v. Kroger*, 437 U.S. 365, 374 (1978), and the Second Circuit has explained that the removal statute is construed narrowly "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments," *Somlyo v. J. Lu-Rob Enters., Inc.*, 932 F.2d 1043, 1045–

46 (2d Cir. 1991), *superseded by rule on other grounds as recognized by Contino v. United States*, 535 F.3d 124, 127 (2d Cir. 2008). Reading the statute with these principles in mind, at least one court in the Second Circuit has found that the word "invoke" in § 1359 dictates that the general grant of diversity jurisdiction "is *limited* by 28 U.S.C. § 1359," not expanded. *See Ferrara v. Philadelphia Lab'ys, Inc.*, 272 F. Supp. 1000, 1015 (D. Vt. 1967), *aff'd sub nom. Ferrara v. Philadelphia Lab'ys, Inc*, 393 F.2d 934 (2d Cir. 1968) (emphasis added); *see also Leshem v. Cont'l Am. Life Ins. Co.*, 219 F. Supp. 504, 506 (S.D.N.Y. 1963) (acknowledging that there was no analogous statute to § 1359, or jurisdictional bar, where an "assignment is made to avoid federal jurisdiction"); *Int'l Union, United Auto., Aerospace & Agric. Implement Workers of Am., U.A.W., Loc. 1500 v. Bristol Brass Co.*, No. CIV. H-87-980 (PCD), 1988 WL 235669, at *1 (D. Conn. July 18, 1988) (noting that the "motive of the plaintiff in joining the in-state defendant is irrelevant," because while § 1359 "prohibits devices to create federal jurisdiction, no statute bars devices to defeat federal jurisdiction"). Thus, § 1359 itself does not prohibit actions taken to intentionally destroy diversity jurisdiction, because that reading would expand the scope of cases within a federal court's jurisdiction, contrary to its narrowing purpose or language. Here, the principles behind the enactment of the diversity and removal statutes are not undermined since Defendant fails to explain any local prejudice it would suffer if a Connecticut jury were faced with a trial between two corporate citizens of Delaware.

Finally, while a court may not deny a party access to a federal court if diversity jurisdiction has created a right to proceed there, it is equally true that courts are charged with determining the bounds of their own jurisdiction, including applying the rule that the removal statute is to be construed narrowly. Notwithstanding mixed case law, the Court returns to first principles: when there is doubt as to removability, the Court must "resolve any doubts" in favor of remand. *Lupo,* 28 F.3d at 274.

## III.    Conclusion

For the reasons set forth above, Plaintiff's motion to remand is GRANTED. The Clerk is directed to remand this case to the Judicial District of Stamford – Norwalk at Stamford.

IT IS SO ORDERED.

_____/s/_____

Janet Bond Arterton, U.S.D.J.

Dated at New Haven, Connecticut this 3rd day of January, 2023